UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>CITY OF NEWARK, *et al.*,<br><br>*Defendant.* | HON. MADELINE C. ARLEO, U.S.D.J<br><br>Civil Action No. 16-cv-1731<br><br>**ORDER EXTENDING<br>MONITORING PERIOD** |

**THIS MATTER HAVING BEEN BROUGHT BEFORE THE COURT** pursuant to a request made by the United States and the City of Newark (the "City") (collectively, the "Parties"), asking the Court to extend the monitoring period outlined by Paragraph 206 of the Consent Decree until September 30, 2025; and the Parties having shown good cause as to why extending the monitoring period is reasonably necessary in order to assess and facilitate full and effective compliance with the Consent Decree;

**IT IS ON THIS** 31 **day of March 2025,**

**ORDERED** that the application of the Parties is granted; and it is further **ORDERED** that

(1) The monitoring period for the Consent Decree is extended until September 30, 2025. During this period, the Parties agree that Independent Monitor Peter C. Harvey and members from his monitoring team (together, the "Independent Monitoring Team" or "IMT") shall continue to monitor the implementation efforts of the City and the Newark Police Division ("NPD") as set forth in this Order.

(2)　The Independent Monitoring Team shall conduct and complete a limited review

1

of NPD's Internal Affairs Division. The Internal Affairs Division assessment will consist of a review of twenty-six (26) Internal Affairs files selected by the United States. NPD will produce 26 Internal Affairs files to the Independent Monitoring Team on a rolling basis beginning in March 2025. The last file will be produced no later than May 1, 2025. The Independent Monitoring Team will address the specific questions and employ the methodology set forth in Exhibit A to this Order to conduct the Internal Affairs assessment.

(3) Commencing on Monday, March 10, 2025, NPD will begin providing updated supervisory training to NPD's supervisors. The training will focus on Consent Decree Paragraphs 27(a), 38, 44, and 79.

(4) The Independent Monitoring Team shall conduct and complete a limited review of NPD's supervisory practices with respect to Consent Decree Paragraphs 27(a), 38, 44, and 79. The assessment will involve reviews of stop, search, arrest, and use-of-force incidents occurring throughout the month of April 2025 that will be selected for review by the United States and broken down as follows:

    a. Consent Decree Paragraph 27(a)      no more than 20 incidents;

    b. Consent Decree Paragraph 38      no more than 20 incidents;

    c. Consent Decree Paragraph 44      no more than 15-20 incidents; and

    d. Consent Decree Paragraph 79      no more than 15-20 incidents.

The incidents concerning Consent Decree Paragraphs 27(a), 38, 44, and 79 shall include video review and all reviewed incidents concerning these paragraphs will include incidents where the responding officers were equipped with Axon Body Worn Cameras. NPD will produce the April 2025 incidents to be reviewed as part of the targeted Supervision assessment to the

Independent Monitoring Team on a rolling basis with the last incident produced no later than May 31, 2025. The Independent Monitoring Team will address the specific questions and employ the methodology set forth in Exhibit B to this Order to conduct the streamlined Supervision assessment.

(5) On or before August 15, 2025, the Independent Monitoring Team will present its findings made in connection with the streamlined Internal Affairs and Supervision assessments to the Parties.

(6) On or before August 31, 2025, the Monitor will file a closeout report addressing the full scope of all Consent Decree activities and improvements made by NPD from the inception of the Consent Decree in May of 2016 through August 2025. The closeout report will also include the Independent Monitoring Team's findings made in connection with the most recent 2025 streamlined Internal Affairs and Supervision assessments.

(7) The Parties and the Monitor have agreed to a **firm cap** of $175,000.00 of additional funding from the City to complete all remaining work under this extension agreement including but not limited to:

    a. Conducting the streamlined Internal Affairs assessment addressed in Paragraph 2 of this Order.

    b. Conducting the streamlined Supervision assessment addressed in Paragraph 4 of this Order.

    c. Preparing and filing the closeout report by August 31, 2025.

    d. Attending any and all Court conferences and Court-sponsored community forums concerning the Consent Decree process and the

Monitor's closeout report.

(8) The total cap for all extension period activities set forth in Paragraph 7 above will be $240,000.00 ($175,000.00 of new funds from the City and $65,0000.00 of remaining funds from the $2.4 million expended by the City in connection with the previous, May 2022 extension order). The City will not be required to make any additional payments.

(9) Payment of the $175,000.00 of new funds from the City shall be made as follows:

    a. $75,000.00 on or before March 31, 2025;

    b. $50,000.00 on or before July 15, 2025; and

    c. $50,000.00 within ten (10) days after filing of the Monitor's closeout report.

(10) On or before July 15, 2025, notice shall be given to the public concerning the impending filing of the Monitor's closeout report on August 15, 2025, and the potential termination of the Consent Decree.

(11) At a date to be set in September 2025, the Court will hold a public forum to give community members the opportunity to discuss NPD's implementation efforts, the Consent Decree process, and the potential termination of the Consent Decree.

(12) Pursuant to Paragraph 224 of the Consent Decree, at the expiration of the Monitoring Extension Period, on September 30, 2025, the City shall have the right to file an application with the Court to terminate the Consent Decree Agreement.

_____

HONORABLE MADELINE COX ARLEO
United States District Court

4

# EXHIBIT A

| | | |
|---|---|---|
| l allegations of Serious Misconduct as defined in this Agreement. | Policies, misconduct investigations and data | IMT review of investigative ass report. Audit question: Were |
| l complaints based on the preponderance of the evidence. This standard will be clearly delineated in es and be accompanied by extensive examples to ensure proper application by investigators. | Policies, misconduct investigations and data | NPD to send relevant policies clearly explained. IMT to chec standard during audit. Audit q reasons for their finding(s)? 2 the preponderance of the evid |
| NPD will collect and consider all relevant circumstantial, direct, and physical evidence, including officer- ecomes available through NPD's implementation of in-car and body-worn cameras pursuant to this | Misconduct investigations | IMT to check NPD collecting a Audit questions include: 1) "D circumstantial, direct and phy BWC or ICC associated with tl reviewing supervisor documei |
| e that investigators consider patterns in officer behavior based upon disciplinary history and other Early Warning System. | Policies, misconduct investigations | NPD to send relevant policies complaint and disciplinary his and account for any relevant p |
| e efforts to resolve material inconsistencies in officers' and witnesses' statements and will not discount s solely due to minor inconsistencies. | Misconduct investigations | IMT to check officers are not a minor inconsistencies during inconsitency between officer a witness statements are incon: witness statement due to min |
| y the same criteria in assessing the credibility of all witnesses' testimony, whether they are civilians, ispects. Investigators will not give greater weight or credibility to officers' statements merely because they vestigators discredit, disregard, or give less weight to a statement merely because of the relationship nt or subject of police action and the person who made it. An individual's criminal history will not be solely g his or her credibility. | Misconduct investigations | IMT to assess during audit. Ch an officer's statement more ci yes, please explain) 2) if comp appear to give that criminal hi unknown |
| e limited to the allegations that prompted it. NPD will evaluate all relevant police activity and evidence of juct uncovered during the course of the investigation, including each use of force (i.e., not just the type of ut) and any stops, searches, or seizures that occurred during the incident. | | Audit question: Is there evider investigation including all rele |

| | | |
|---|---|---|
| | | training, counseling, or ... Y/N/Unknown) 4) did investiga should revise its policies, stra incident forwarded to the poli |
| | Misconduct investigations | |
| a finding that an allegation of misconduct is unfounded or not sustained, or otherwise exonerate an e the complaint is withdrawn or the complainant is unavailable, unwilling, or unable to cooperate with an es to provide medical records or proof of injury; rather, the investigation will continue as necessary to egation(s) where possible based on the evidence and investigatory procedures and techniques available. | | Audit questions: 1) was the cc unwilling or unable to coopera records? Y/N/Unkown, 1a) If y unfounded, not sustained, or |
| | Misconduct investigations | y/n/unknown/NA |
| Is guilty or is found guilty of an offense, NPD will not consider the fact of conviction to be evidence whether d in misconduct, nor will it justify discontinuing the investigation. | | Audit questions: 1) was comp to give that weight in determin |
| | Misconduct investigations | |
| int investigation may not be conducted by any supervisor or officer who authorized, engaged in conduct se participated in the incident complained of; who was on the scene at the time of the incident; or who has s defined by NPD policy. | | Audit questions: 1) did the mi: officer who authorized, engag the incident complained of; w |
| | Misconduct investigations | who has a conflict of interest a |
| reliminary inquiry into an allegation of misconduct, or at any other time during the course of an gation, the OPS has cause to believe that an officer or employee might have engaged in criminal conduct, natter to the ECPO, DOJ, or other law enforcement agency as appropriate. | | Audit question: 1) Is there evic officer/employee might have e the matter to ECPO, DOJ or ot |
| | Misconduct investigations and records | Y/No/unknown (please explaii |
| eferral and unless otherwise directed by the prosecutive agency, NPD will proceed with its administrative no circumstances will OPS compel a statement from the subject officer without first consulting with the with the prosecuting agency. | | IMT to flag if they see evidence without first consulting with cl Audit questions: "1) Is there a there is a related criminal inve statement from a subject offic |
| | Misconduct investigations and records | and with the prosecuting ager |
| ically end its administrative investigation in matters in which the prosecuting agency declines to prosecute ation of criminal charges. Instead, NPD will require investigators to conduct a complete investigation and vant evidence. | | IMT to flag if NPD automatical which the prosecuting agency of criminal charges. Audit que into the same matter? 1a) If sc investigation because the pro: |
| | Misconduct investigations and records | the matter?" |

# EXHIBIT B

| | | | |
|---|---|---|---|
| onal circumstances, a supervisor will immediately for obstructing or resisting an officer, any disorderly or a vehicle infraction or as required by the use of force 1e event that a supervisor is unable to respond to the case file the circumstances preventing his or her involve obstructing or resting arrest, any disorderly le infraction; (b) Did the supervisor respond to the ond to the scene, did the supervisor document the er presence? | Arrest Report (DPI 800); Incident Report (DPI 802); Incident Details Report (CAD Summary); RMS Supervisory Logs; Supervisory update reports. | Discuss methodology with IMT and NPD and determine the sampling of Paragraph 38 arrests to create a sample for the mini-audit (e.g., 20-30 incidents) | Given that it's Roll Call Trai distribute content slides fo also suggest that NPD cond create learning objectives, design and pre- and post-tr |
| tigatory stops and detentions, searches, and arrests for PD policy. NPD's supervisors will: l incidents in which the supervisor suspects, for any have complied with law or NPD policy; and selection of video recordings of stops and detentions, 10 percent of all stops and detentions, searches, and or review all written documents; (b) Did the video recordings; (c) Did the supervisor maintain a of stops and detentions, searches, and arrests l stops and detentions, searches, and arrests? | Stop Report (DPI 1388); Arrest Report (DPI 800); Incident Report (DPI 802); BWC/ICC audit logs; Supervisory Logs. | Discuss methodology with IMT and NPD and determine the sampling of stop, search, and arrest incidents to create a sample for the mini-audit (e.g., 20-30 incidents) | |
| will include at least the following requirements: ce form and narrative each time the officer uses force. officer will complete a supplemental narrative. olstering or pointing a weapon or unresisted 1e supervisor of an officer using force will respond to cy ch the use of force should be categorized. A supervisor vould usually be required for the level of the force used, 1e incident. es of force or multiple officers, the entire incident will t level of force used by any officer during the incident. is otherwise personally involved in any type of force, a | Incident Report (DPI 802); Supervisor use of force report (DPI 1005); AFIT use of force summary. | Discuss methodology with IMT and NPD and determine the sampling of use of force incidents to create a sample for the mini-audit (e.g., 20-30 incidents) | |