CLOSING

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>MADELINE COX ARLEO<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST. ROOM 4066<br>NEWARK, NJ 07101<br>973-297-4903 |

November 19, 2025

VIA ECF
All Counsel of Record

**LETTER ORDER**

Re:   United States of America v. City of Newark
      Civil Action No. 16-1731

Dear Litigants:

Before the Court is the Independent Monitor Peter C. Harvey's Final Report, see ECF No. 435 (the "Final Report"), and the City of Newark's (the "City" or "Newark") Motion to Terminate the Consent Decree[1] and remove federal oversight of the Newark Police Division ("NPD"), see ECF No. 436. The United States supports the City's Motion. See ECF No. 437. For the reasons discussed below, the City's Motion is **GRANTED** and the Consent Decree is **TERMINATED**.

I.   **FACTUAL BACKGROUND**[2]

The complex history of the City's policing is well-documented in the filings in this case. The Parties agree that the NPD required significant reform when the American Civil Liberties Union ("ACLU") petitioned the Department of Justice ("DOJ") to investigate NPD in 2010. See Final Report, Ex. 1. The DOJ's three-year investigation confirmed many of the ACLU's allegations by finding a "pattern or practice of constitutional violations in the NPD's stop and arrest practices, its response to individuals' exercise of their rights under the First Amendment, the Department's use of force, and theft by officers." See id., Ex. 2 (the "DOJ Report") at 1. The DOJ Report further found that these constitutional violations were, in part, attributable to "deficiencies in the NPD's systems that are designed to prevent and detect misconduct." Id. The

---

[1] The Department of Justice and the City originally submitted a proposed Consent Decree to the Court on March 30, 2016. See ECF No. 2. The Parties then filed an amended proposed Consent Decree on April 29, 2016. See ECF No. 4. The Court approved the amended Consent Decree on May 5, 2016. See ECF No. 5. The phrase "Consent Decree" refers to the amended Consent Decree approved by the Court on May 5, 2016, as amended on February 2, 2018.

[2] The Court only sets forth a brief recitation of the facts. The background of this case—including the myriad improvements the City and NPD have undertaken—is more fulsomely set forth in the Final Report and the City's Motion. See Final Report, §§ IV & V; see generally City's Mot.

release of the DOJ Report prompted the City and DOJ to enter negotiations regarding a plan to reform NPD, which culminated in the entry of the Consent Decree.

The Consent Decree required NPD to reform its policies and practices under the supervision of the Court, the DOJ, and the Independent Monitor. NPD was charged with reforming its practices in the following areas: (1) training (including keeping accurate and timely training records); (2) community engagement and civilian oversight; (3) stops, searches, and arrests; (4) bias-free policing; (5) use of force; (6) body-worn cameras and in-car cameras; (7) property and evidence; (8) internal affairs; (9) data systems; and (10) supervision. See generally Consent Decree.

On May 14, 2024, the City and DOJ jointly requested that the Court partially terminate the Consent Decree with respect to certain provisions related to training and training records, community engagement, investigatory stops, and property and evidence. See ECF No. 357. The Court entered an Order granting the Parties' Joint Motion on May 17, 2024, terminating the City's and NPD's obligations under certain Consent Decree paragraphs. See ECF No. 360. The Consent Decree remained in full effect for the subject matter areas not covered by that Order and those topics continued to be subject to the Independent Monitor's review.

In late 2024, the Parties agreed to a final extension of the Consent Decree to allow the Independent Monitor to conduct final audits and prepare the Final Report. See ECF No. 412.

On September 8, 2025, the Independent Monitor filed the Final Report. The Final Report verified the City's and NPD's substantial and sustained compliance with the core provisions of the Consent Decree. The Report makes clear that NPD has drastically improved. Several of the NPD's achievements are highlighted below.

First, the City has both drafted and revised important policies covering, inter alia, arrests, stops, investigatory stops, and searches with or without a warrant. See Final Report at 7–8. For example, the NPD developed a First Amendment Policy to address the role of police when community members record them on a cell phone, or when community members exercise their First Amendment right at public meetings. See General Order 18-12, First Amendment Right to Observe, Object To, and Record Police Activity, effective June 12, 2019.

Second, the City implemented "a nearly first-in-the-nation bias-free policing policy," which means an officer who polices in a demonstrably biased way can be disciplined up to and including termination. See Final Report at 35, 73–74; General Order 17-06, Bias-Free Policing, effective Sept. 19, 2017. Critically, NPD officers are required "to provide certain information when stopping members of the public, such as their name, agency affiliation, and basis for the stop, under the rationale that these elements of procedural justice are instrumental to conveying impartiality and respect toward people stopped by police." Final Report at 35.

Third, the NPD developed and implemented body-worn camera and in-car camera programs citywide, providing for transparency and giving a clear record of officer engagement with civilians that protects officers and civilians alike. See id. at 44–49.

Fourth, the NPD built a state-of-the-art officer training facility. The 100,000-square-foot Public Safety Training Complex is "designed to prepare officers for the challenges of 21st-century

public safety, ensuring Newark's police and public safety professionals receive the training they, and the community they serve, deserve." See id. at 13.

Fifth, in addition to implementing three new policies governing the management of property and evidence, see id. at Ex. 14, 2–3, the NPD built a new facility for storage of property and evidence that met the requirements of the Consent Decree, see id. at 52–54.

Sixth, NPD has committed to meaningful civilian oversight and community engagement by implementing its first ever community policing policy. See id. at 19; see also General Order 18-13, Community Policing, effective Apr. 4, 2019. The Independent Monitor notes that "NPD even took some steps to improve its community policing practices that went beyond the requirements of the Consent Decree." Final Report at 19. For example, the NPD implemented a policy to improve officers' interactions with members of the LGBTQ community. See id.; see also General Order 19-03, LGBTQ Community & Police Interactions, effective Apr. 3, 2019.

These improvements notwithstanding, the Independent Monitor noted some areas of focus that NPD should continue to hone as it strives to develop an even safer, more efficient, and more responsible police force. See generally Final Report §§ IV–V. Specifically, the Independent Monitor recommended that NPD: (1) implement modern computerized data systems to more readily identify signs of isolated misconduct; (2) hire a full-time training director; (3) develop and implement a robust youth engagement strategy; (4) improve training oversight of supervisors; and (5) prepare and implement revised internal affairs policies that comport with New Jersey labor law and the Consent Decree. See Final Report at 74–75. These are all laudable goals.

On October 2, 2025, the Court held a hearing on the City's Motion to Terminate the Consent Decree. At the hearing, counsel for the City and the United States presented argument in support of terminating the Consent Decree, echoing much of the progress detailed in the Final Report. The Independent Monitor also affirmed that the City is in substantial compliance with the Consent Decree. The Court then took comments from the public, including a presentation from the Mayor of Newark, Ras Baraka.[3]

At the conclusion of the hearing, the Court reserved its ruling on the City's Motion to Terminate and kept the record open for several weeks to allow the public an opportunity to submit additional comments.[4] The Court now turns to the question of whether the Consent Decree should be terminated.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 60(b)(5) provides that courts can terminate a judgment when "the judgment has been satisfied" or when "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). In applying Rule 60(b)(5), the Third Circuit has recognized that "equity

---

[3] Other members from the public spoke at the hearing, including: (1) the manager of the Newark New Jersey Civilian Complaint Division Board, R.H. Robinson, III; (2) the chairman of the People's Organization for Progress, Lawrence Hamm; and (3) the Director of Criminal Justice Reform at the New Jersey Institute for Social Justice, Surraya Johnson.

[4] The Court is aware of one post-hearing submission from a member of the public, which the Court considers in rendering its decision. See ECF No. 442.

3

demands a flexible response to the unique conditions of each case" when considering whether to modify or terminate a consent decree. Bldg. and Const. Trades Council of Phila. & Vicinity v. Nat'l Lab. Rel. Bd., 64 F.3d 880, 888 (3d Cir. 1995). General considerations include "the circumstances leading to [the] entry of the injunction and the nature of the conduct sought to be prevented; the length of time since entry of the injunction; whether the party subject to its terms has complied or attempted to comply in good faith with the injunction; and the likelihood that the conduct or conditions sought to be prevented will recur absent the injunction." Id.

In institutional reform cases like this one, Rule 60(b)(5) serves a "particularly important function." Horne v. Flores, 557 U.S. 433, 447 (2009). The "passage of time" in these cases "frequently brings about changed circumstances"—including "changes in the nature of the underlying problem" and "new policy insights"—that "warrant reexamination of the original judgment." Id. at 448. In assessing the prospective application of an institutional reform injunction, courts examine whether "the objective" of the judgment "has been achieved." Id. at 450. "If a durable remedy has been implemented, continued enforcement of the order is not only unnecessary, but improper." Id.[5]

### III. ANALYSIS

The Court looks to several factors in determining whether to terminate the Consent Decree: (1) the circumstances that lead to entry of the Consent Decree and the conduct sought to be prevented; (2) the length of time since the Consent Decree was entered; (3) whether the City has complied in good faith with the injunction; and (4) the likelihood that the conduct or conditions the Consent Decree sought to prevent will recur absent the injunction. See Bldg. and Const. Trades Council, 64 F.3d at 888. As to the last consideration, the Court considers whether the City has implemented durable remedies. See Horne, 557 U.S. at 448. The Court addresses each in turn.

First, the circumstances that lead to the entry of the Consent Decree have been thoroughly documented in this case. See Final Report, Ex. 1, ACLU Petition; id., Ex. 2, DOJ Report; ECF No. 1, Compl.; Consent Decree. No party denies that the City's policing practices required

---

[5] The Consent Decree sets forth independent criteria for its termination. Under Paragraphs 223 through 225, the Court may terminate the Consent Decree upon a finding that the City is in "Full and Effective Compliance" with "all material requirements of [the] Agreement and sustained and continuing improvement in constitutional policing, as demonstrated pursuant to the Agreement's outcome measures." Consent Decree ¶ 223; see also id. ¶ 225 ("Upon the Court's determination that the City and NPD have achieved Full and Effective Compliance and have maintained such compliance for at least two years, the Court will terminate the Agreement and dismiss the case."). The Court need not reach the question of whether the City is in "Full and Effective Compliance" to terminate the Consent Decree because the City has met the Rule 60(b)(5) legal standard for decree termination by implementing durable reforms that address the concerns underlying the United States' findings of constitutional violations. See Horne, 502 U.S. at 450.

The Court also recognizes that this Consent Decree has been in place for nearly a decade and that, during that time, the parties faced challenges not of their own making including the global COVID-19 Pandemic. The additional time and resources it would likely take to achieve "Full and Effective Compliance" with all material requirements of the Consent Decree appears, on balance, unnecessary considering the City's and NPD's substantial improvements and the burden imposed by maintaining the Consent Decree on all parties involved.

significant improvement to remedy a historic pattern and practice of constitutional violations by the NPD.

Second, the Consent Decree has been in effect since May 5, 2016. In other words, the NPD has been under federal oversight for nearly a decade.

Third, as to whether the City has complied in good faith with the Consent Decree, it is noteworthy that each party appearing in this case, including the Independent Monitor, agrees that the City has substantially complied with the Consent Decree. See, e.g., City's Mot. at 14; ECF No. 437 at 4; 10/02/25 Hearing Tr. There is no question that the City has done so in good faith. As noted by the Independent Monitor during the October hearing, this case represents an example of collaborative reform. See 10/02/25 Hearing Tr. The detailed Final Report and the City's presentations in support of termination corroborate the Monitor's statement. For the reasons enumerated above and those detailed at length in the City's Motion and the Final Report, the Court is convinced that the City has substantially complied in good faith with the Consent Decree's requirements.

The fourth consideration, the likelihood that the conduct or conditions the Consent Decree sought to prevent will recur absent the injunction, tips in favor of termination because the City has implemented durable reforms that address the concerns underlying the United States' findings of constitutional violations. A brief review of some of these permanent reforms is warranted here.

First, the City enacted many policies pursuant to the Consent Decree including those governing bias-free policing; stops, searches, and arrests; use of force; First Amendment protections; and transparency. See Final Report at 7–8. These policies carry defined supervisory responsibilities, mandatory reporting obligations, and audit requirements. Id. The policies have all been codified as standing NPD General Orders, meaning that they cannot be disregarded, and supervisors are held accountable for consistent enforcement. These policies address the needs of twenty-first century policing.[6]

Second, the City created permanent oversight mechanisms to normalize accountability such as enacting the Transparency Policy, which requires: (1) the monthly posting of stop, use-of-force, and civilian complaint data; (2) weekly internal checks to identify anomalies in reporting; and (3) quarterly reports to both NPD leadership and the Civilian Complaint Review Board (the "CCRB").[7] See General Order 18-13, Community Policing, effective Apr. 4, 2019; see also City's Mot. at 11.

---

[6] The City also submitted a proposed City of Newark Executive Order establishing the Office of Constitutional Affairs and In-House Monitoring Process, which the City represents will be immediately enacted in the event that the Court grants the City's Motion. See ECF No. 439. Based on a review of the City's Legislative Research Center webpage, it appears this Executive Order was filed on October 29, 2025.

[7] The Consent Decree required that the City of Newark "implement and maintain a civilian oversight entity" that would "review [NPD's] internal investigations," monitor trends in police misconduct and discipline, and "recommend[] changes to NPD's policies and practices." See Consent Decree ¶ 13. The Newark City Counsel enacted an ordinance establishing the CCRB in 2016 to serve that civilian oversight function of the Consent Decree. See Final Report, Ex. 19 at 16. The CCRB is operational today, although intervening legal developments have limited its ability to conduct independent investigations. See id., Ex. 19 at 16–17. The implementation of this Board

Third, the City has demonstrated its willingness to allocate budget resources to sustain reform practices. For example, the City made major capital investments for a modern training center, a new evidence and property building, and the re-establishment of the Newark Police Academy. See Final Report at 11–14, 52.

Fourth, more than half of the NPD's sworn members were hired under the reformed standards. See City's Mot. at 21. These members—some of whom will be the NPD's next generation of leaders—entered service already trained and socialized in the values of constitutional policing, community engagement, and accountability.

Fifth, the City set up systems to ensure public accountability. For example, the NPD's online Transparency Portal provides residents with monthly, disaggregated data on stops and use of force. See id.[8]

Based on these facts, "the objective" of the Consent Decree "has been achieved." Horne, 557 U.S. at 448. Over the last decade, Newark has committed the time, effort and resources needed to implement systemic changes. NPD is vastly improved and has the infrastructure in place to continue to improve in the future. All parties agree that termination is appropriate. The community is also largely supportive. It is now time to return the NPD to its elected leadership and its community. Enforcing the Consent Decree "prospectively is no longer equitable," Fed. R. Civ. P. 60(b)(5), and continued enforcement of the order is unnecessary because "durable remed[ies] ha[ve] been implemented," Horne, 557 U.S. at 448. The Consent Decree is hereby terminated.

## IV. CONCLUSION

For these reasons, the City's Motion, ECF No. 436, is **GRANTED**, the Consent Decree is **TERMINATED**, this lawsuit is **DISMISSED WITH PREJUDICE**, and this case is **CLOSED**.

**SO ORDERED**.

*s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

recognizes the importance of community involvement in policing.

[8] The NPD's transparency data webpage is available at https://www.npdconsentdecree.org/transparency-data.